IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GUILLERMO DIAZ,

    Plaintiff,

v.                                                            CIV 12-0612 JCH/KBM

RIO ARRIBA COUNTY DETENTION CENTER,
DETENTION ADMINISTRATOR LARRY DEYAPP,
ASSISTANT ADMINISTRATOR DENNIS HERRERA,
and HUMAN RESOURCES DIRECTOR JESSICA MADRID,
in their Individual and Official Capacity,

    Defendants.

# PROPOSED FINDINGS
# AND
# RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendants' Motion for Summary Judgment *(Doc. 14)*, on which Defendants filed a notice of completed briefing December 18, 2012. *See Doc. 22*. The pro se Plaintiff failed to file a response in opposition to the motion although I gave him ample additional time to do so. *See Doc. 19*. At the telephonic conference held November 7, 2012, I thoroughly explained to Mr. Diaz that if he failed to file a response by the new December 7, 2012 deadline, our local rules deem that a non-responding party consents to the entry of an order granting the motion. *See* D.N.M.LR- Civ 7.1(b).

The Honorable Judith C. Herrera referred this matter to me pursuant to 28 U.S.C. § 636(b)(1)(B) to conduct hearings, if warranted, and perform any legal analysis required to recommend the ultimate disposition of this case. *Doc. 11*. The Court has reviewed the motion, memorandum and exhibits submitted by Defendants and finds that a hearing is unnecessary for

its determination. Finding the motion for summary judgment to be well taken, the Court will recommend to Judge Herrera that it be granted.

## I. BACKGROUND

Defendant timely removed this pro se action from state court pursuant to 28 U.S.C. § 1441 based upon original federal question subject matter jurisdiction. *See Doc. 1*. Plaintiff also brings several state claims in connection with the termination of his employment as a detention officer over which this Court has supplemental jurisdiction. The Complaint brings claims for: breach of contract (Count I); breach of the implied covenant of good faith and fair dealing (Count II); wrongful termination (Count III); gender discrimination (Count V); failure to accommodate a serious medical condition under the New Mexico Human Rights Act (Count VI); and alleged violation of the Americans with Disabilities Act ("ADA") found at 42 U.S.C. § 1201 (Count VII). The Complaint did not include any "Count IV."

## II. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "genuine" dispute exists where the evidence is such that a reasonable jury could resolve the issue either way. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A mere scintilla of evidence in the non-movant's favor is not sufficient. *Anderson*, 477 U.S. at 252. However, the court must consider all the evidence in the light most favorable to the party opposing summary judgment. *See Trask v. Franco*, 446 F.3d 1036, 1043 (10th Cir. 2006).

Both the movant and the party opposing summary judgment are obligated to "cit[e] to *particular parts* of materials in the record" to support their factual positions. FED. R. CIV. P.

56(c)(1)(A) (emphasis added).  Alternatively, parties may "show[] that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1)(B).  *See also Medlock v. United Parcel Service, Inc.*, 608 F.3d 1185, 1189 (10th Cir. 2010) ("[I]f the matter in issue concerns an essential element of the nonmovant's claim, the moving party may satisfy the summary judgment standard 'by identifying a lack of evidence for the nonmovant on [that] element.'" (internal quotation and citation omitted) (alteration in original)).

Materials cited to establish the presence or absence of a genuine dispute must be in a form that would be admissible in evidence.  FED. R. CIV. P. 56(c)(2).  The court need only consider the materials cited by the parties.  FED. R. CIV. P. 56(c)(3).  In the event that a party fails to cite materials or otherwise properly address another party's assertion of fact, the court may consider the fact undisputed and, if the motion and supporting materials show that the movant is entitled to it, grant summary judgment.  FED. R. CIV. P. 56(e).  The court is also empowered to grant summary judgment, if appropriate, independent of the motion after giving notice and a reasonable time to respond.  FED. R. CIV. P. 56(f).

**III.  THE UNDISPUTED FACTS**

Because Plaintiff failed to respond to the motion, the summary of facts set forth by Defendants are uncontroverted and, therefore, undisputed:

> 1.  Plaintiff is a former employee of Rio Arriba County's Detention Center where he was employed as a detention officer beginning in 2007.  The job of a detention officer requires an individual to be able to handle aggressive situations, including physical confrontations.
>
> 2.  On October 14, 2009, Plaintiff provided a doctor's note to Human Resources limiting him to light duty work due to an unidentified medical condition.
>
> 3. Believing his light duty restriction to be temporary, Detention Center Director Larry DeYapp allowed Plaintiff to continue to work as a detention officer but

Plaintiff was temporarily confined to the master control center where his duties would be less strenuous. The Corrections Department did not have any permanent light duty positions.

4. Mr. Diaz received a written verbal warning on November 19, 2009 for leaving his post without properly signing out to the officer who was to relieve him, there is no relationship whatsoever with this warning and his request for light duty. Mr. Diaz did not lose any pay or privileges; it was strictly a warning.

5. Mr. Diaz's claim that an "offensive" memorandum on abuse of sick leave targeted him is unfounded. An internal audit had shown that several employees had taken excessive amounts of non-FMLA leave and the County just wanted to remind all employees that it affects their coworkers when they do not report for duty without adequate notice.

6. On March 5, 2010, Plaintiff provided an additional doctor's note stating that he could only work the day shift rather than his usual swing shift of 2:00 p.m. to 10:00 p.m. for the reason that it would be better for his "circadian rhythm." On that day Mr. DeYapp sent Plaintiff home because Plaintiff had already been scheduled for the swing shift and there were no day shift positions available.

7. Mr. Diaz complained and insisted that he should be put on the day shift. Mr. DeYapp reminded him that the doctor could make recommendations, but that the doctor was not in charge of the facility and that Mr. DeYapp could not just pull another officer off the day shift.

8. Mr. DeYapp wanted to consult Human Resources about the possibility of accommodating this new request. It was then that Mr. DeYapp became aware for the first time of the statement on Plaintiff's FMLA paperwork dated November 12, 2010 indicating that there would be a risk of severe bleeding if Plaintiff suffered a blow to the abdomen.

9. For this reason, Mr. DeYapp advised Plaintiff on March 30, 2010 that, given these restrictions, Plaintiff could not be safely released to perform the duties of a detention officer until he could be cleared by a physician to return to his duties. Mr. DeYapp gave Plaintiff a copy of his job description and asked him to discuss with his doctor whether he could perform all the necessary functions of his position as a corrections officer. The possibility of accommodating Plaintiff by moving him into another position was addressed in Mr. DeYapp's letter to Plaintiff of March 30, 2010, but Plaintiff made no efforts to consider another position. Plaintiff was told that he would be put on FMLA leave unless and until he could perform his duties as a corrections officer or until he was transferred to a position where he would not suffer risk of serious injury.

10. Given the duties of a detention officer, the risk of physical injury is always present. The official position description for detention officers states that the

employee must be able to perform a wide range of duties, including the processing of prisoners; inspection of the facility; prisoner transfers; dealing with verbal and physical abuse from inmates; and maintaining a working environment that is safe for the employee and others.  The employee's working conditions necessarily include: exposure to physical confrontations, including rescue attempts; and a wide range of physical activities in which one's personal safety cannot be guaranteed, such as driving and climbing.  Even a detention officer assigned to work at the master control center is by definition exposed to all the potential conditions inside the facility and must be available to assist in the event of an incident or an emergency.

11. On April 23, 2010 Human Resources advised Plaintiff that he had five weeks of FMLA remaining.  He was told that if he were able to provide the necessary medical documentation within this period showing that he was capable of performing his duties safely, he would be returned to work.

12. Plaintiff remained an employee of Rio Arriba County until June 18, 2010.  Despite the fact that Plaintiff was advised that he remained employed despite exhaustion of his paid leave, Plaintiff unilaterally chose to view himself as terminated and refused further communications with his employer.

13. As a result, Rio Arriba could not evaluate Plaintiff's ability to return to work in any capacity after that date.  Plaintiff chose not to engage in the interactive process that the employer had initiated with him to determine if Rio Arriba had an alternative position for which he was qualified. Rio Arriba, under those circumstances, had no choice but to consider Plaintiff as having terminated his employment, effective June 18, 2010.

14. Plaintiff filed a charge of discrimination with the EEOC and the New Mexico Human Rights Division alleging that he had been a victim of disability and gender discrimination.  The matter was investigated by the Human Resources Division and a Notice of Non-determination and Right to Sue was issued on March 10, 2011.  The EEOC issued its Determination and Notice of Right to Sue on November 8, 2011.  Plaintiff filed his lawsuit on January 10, 2012.

*Doc. 15* at 1-5 (omitting references and cites to evidence submitted in support of each fact).

**IV.  LEGAL ANALYSIS**

Defendants' memorandum is both thorough and accurate as to the controlling law for each claim, and I incorporate that discussion herein.  *See id.*  To that discussion, I provide the following brief observations.

It is uncontroverted that Plaintiff served not as an at-will employee, but as a classified employee with the right to continued employment in the absence of good cause for a termination.  Because he therefore has other remedies available to him, a common law wrongful termination claim is unavailable.  Thus, Defendants are entitled to summary judgment on Count III of the Complaint.

Plaintiff maintains that he was subjected to discriminatory actions in violation of the non-discrimination policy set forth in Rio Arriba's employment manual. In Counts I and II, he contends that such actions constituted a breach of his employment contract and the implied covenant of good faith and fair dealing.  Defendants maintain, however, that "New Mexico courts have long held that general statements of non-discrimination in a personnel policy are not contractual terms that are redressable by a claim for breach of contract or for the breach of the implied covenant of good faith and fair dealing." *Doc. 15* at 7 (and cases cited therein).  Even if such general statements qualified as contractual terms, Plaintiff has come forward with no evidence of discriminatory action or animus, prima facie or otherwise, by Defendants.

The undisputed facts demonstrate that Plaintiff was at risk of severe bleeding if he suffered a blow to the abdomen and that the duties of his position as a detention officer placed him in situations where the risk of serious physical injury was always present.  Plaintiff has produced no evidence that as of June 18, 2010, he was capable of safely performing the duties of a detention officer and that he had provided medical documentation to that effect.  Obviously, insuring the safety of its employees constitutes a legitimate concern of the employer, and the undisputed evidence reveals that Plaintiff refused to work with his employer to find a reasonable way to accommodate that concern.  Therefore, Defendant's decision to terminate Mr. Diaz was

appropriate. Defendants are entitled to summary judgment on the state and federal claims for failure to accommodate his medical condition claims in Counts VI and VII, even if timely filed.

Finally, Plaintiff has come forward with no evidence that gender played any role in his termination as alleged in Count V. For all of the above reasons, the Court finds Defendants' motion well taken.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Defendants' Motion for Summary Judgment *(Doc. 14)* be granted and this action dismissed in its entirety.

> **The parties are further notified that within 14 days of service of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE